# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BANK OF AMERICA, N.A.,<br><br>                  Plaintiff,<br>vs.<br><br>SFR INVESTMENTS POOL 1, LLC; SBH2 HOMEOWNERS ASSOCIATION; FRANCES ESCAMILLA; and GREGG ESCAMILLA,<br><br>                  Defendants. | Case No.: 2:15-cv-00692-GMN-CWH<br><br>**ORDER** |

SFR INVESTMENTS POOL 1, LLC,

                  Cross-Claimant,
vs.

FRANCES ESCAMILLA; and GREGG ESCAMILLA,

                  Cross-Defendants.

SFR INVESTMENTS POOL 1, LLC,

                  Counter-Claimant,
vs.

BANK OF AMERICA, N.A.,

                  Counter-Defendant.

SBH2 HOMEOWNERS ASSOCIATION,

                  Third-Party Plaintiff,
vs.

NEVADA ASSOCIATION SERVICES, INC.

                  Third-Party Defendant.

| | |
|---|---|
| NEVADA ASSOCIATION SERVICES, INC., | ) |
| Counter-Claimant, | ) ) |
| vs. | ) ) |
| SBH2 HOMEOWNERS ASSOCIATION., | ) ) |
| Counter-Defendant. | ) ) ) |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 105), filed by Defendant SBH2 Homeowners Association ("HOA"). Plaintiff Bank of America, N.A. ("BANA") filed a Response, (ECF No. 115), and HOA filed a Reply, (ECF No. 117).

Also pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 109), filed by BANA. HOA and SFR Investment Pool 1 ("SFR") filed Responses, (ECF Nos. 119, 120), and BANA filed a Reply, (ECF No. 123).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 113), filed by SFR. BANA filed a Response, (ECF No. 118), and SFR filed a Reply, (ECF No. 122).

For the reasons discussed below, the Court **GRANTS** SFR's Motion for Summary Judgment, (ECF No. 113), **GRANTS** HOA's Motion for Summary Judgment, (ECF No. 105), and **DENIES** BANA's Motion for Partial Summary Judgment, (ECF No. 109).

I. **BACKGROUND**

This case arises from the non-judicial foreclosure on real property located at 6018 Tea Light Court, Las Vegas, Nevada 89113 (the "Property"). (Am. Compl. ¶ 12, ECF No. 5). In 2007, Gregg and Frances Escamilla purchased the Property by way of a loan in the amount of $347,274.00 secured by a deed of trust ("DOT") recorded on October 9, 2007. (Deed of Trust, Ex. A to Am. Compl., ECF No. 5-1). The DOT identifies BANA as the lender. (*Id.*).

On June 15, 2010, HOA, through its agent Nevada Association Services, Inc. ("NAS"), recorded a Notice of Delinquent Assessment Lien against the Property. (Notice of Delinquent

1  Assessment, Ex. B to Am. Compl., ECF No. 5-2). On August 24, 2010, HOA recorded a
Notice of Default and Election to Sell to satisfy the delinquent amount. (Notice of Default, Ex. C to Am. Compl., ECF No. 5-3). A Notice of Trustee's Sale was recorded against the Property on September 7, 2012, and a non-judicial foreclosure occurred on January 11, 2013, through which SFR purchased its interest in the Property. (*See* NAS Letter Regarding Payment from Auction Proceeds, Ex. 1 to HOA's MSJ, ECF No. 105–1). SFR recorded its Foreclosure Deed on January 16, 2013. (Answer to Am. Compl. ¶ 5).

BANA filed its Amended Complaint on April 27, 2015, asserting the following causes of action against various parties involved in the foreclosure and subsequent sale of the Property: (1) quiet title with a requested remedy of declaratory relief against all Defendants; (2) wrongful foreclosure against HOA; (3) breach of Nevada Revised Statute 116.1113 against HOA; and (4) injunctive relief against SFR. (Am. Compl. ¶¶ 31–64).

## II.     **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

### III. DISCUSSION

In its Motion for Summary Judgment, SFR argues that there is no dispute of material fact that the Property foreclosure sale extinguished BANA's prior DOT, thereby justifying quiet title in SFR's favor. (SFR's MSJ 6:21–23, ECF No. 113). HOA in its Motion for Summary Judgment contends that the quiet title dispute remains between BANA and SFR alone, which deserves dismissal of any quiet title claims against HOA. (HOA's MSJ 7:17–23, ECF No. 105). BANA, by contrast, argues that summary judgment should be granted in its favor because HOA received tender of the super priority amount prior to foreclosure, the sale price was grossly inadequate, and the Ninth Circuit's decision in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017),[1] compels a finding that its DOT survived the sale. (*See* MSJ 2:7–3:19, ECF No. 109). The Court addresses each of those issues in turn, beginning with the applicability of *Bourne Valley* to this case.

#### A. Constitutionality of the Foreclosure

In *Bourne Valley*, the Ninth Circuit held that NRS § 116.3116's "'opt-in' notice scheme, which required a homeowners' association to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated the lender's

---

[1] In light of the Nevada Supreme Court's ruling in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018) (en banc), the Court ordered supplemental briefing on "whether a statute that has been found to be facially invalid can be cured by subsequent interpretation by a state supreme court." (Order, ECF No. 124). HOA, BANA, and SFR timely filed their respective supplemental briefs, (ECF Nos. 125, 126, 127).

constitutional due process rights under the Fourteenth Amendment to the Federal Constitution." *Bourne Valley*, 832 F.3d at 1156. Specifically, the Court of Appeals found that by enacting the statute, the Nevada legislature acted to adversely affect the property interests of mortgage lenders and was thus required to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1159. The statute's opt-in notice provisions therefore violated the Fourteenth Amendment's Due Process Clause because they impermissibly "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Id.*

In holding that NRS § 116.3116's opt-in notice scheme is facially unconstitutional, the Ninth Circuit rejected the appellant's argument that NRS § 107.090 should be read into NRS § 116.31168(1) to cure the constitutional deficiency. *Id.* Specifically, the appellant argued that the "incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request." *Id.* The Ninth Circuit, interpreting Nevada law, held that this interpretation "would impermissibly render the express notice provisions of Chapter 116 entirely superfluous." *Id.*

Subsequent to *Bourne Valley*, a court in this District certified the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 required a homeowner's association to provide notices of default and/or sale to persons or entities holding a subordinate interest even when such persons or entities did not request notice, prior to the amendment that took effect on October 1, 2015." *Bank of New York Mellon v. Star Hill Homeowners Ass'n*, No. 2:16-cv-02561-RFB-PAL, 2017 WL 1439671, at *5 (D. Nev. Apr. 21, 2017). On August 2, 2018, the Nevada Supreme Court issued its decision on the certified question in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018). The Nevada Supreme Court explicitly "decline[d] to follow the majority holding

in *Bourne Valley*, 832 F.3d at 1159," and concluded that "NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090 . . . ." *Id.* at 1253. Therefore, "before the October 1, 2015, amendment to NRS 116.31168, the statute incorporated NRS 107.090's requirement to provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." *Id.*

"[A] State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret and, where they see fit, to reinterpret that state's legislation."). Federal courts are bound by its respective circuit courts' interpretations of state law only "in the absence of any subsequent indication from the [state] courts that [the federal] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983); *see also Togill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017) (holding that the Fourth Circuit was bound by the Supreme Court of Virginia's limiting construction of a statute that was previously found to be facially unconstitutional by a federal court). Such rulings may only be reexamined when the "reasoning or theory" of that authority is "clearly irreconcilable" with the reasoning or theory of intervening higher authority. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). In determining whether intervening higher authority is "clearly irreconcilable," courts must "look at more than the surface conclusions of the competing authority." *Id.* "Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* (quoting *Gammie*, 335 F.3d at 900).

Here, the Nevada Supreme Court's interpretation of NRS 116.31168's notice provisions is irreconcilable with the Ninth Circuit's prior interpretation. The Ninth Circuit's conclusion that NRS § 116.3116 violated a lender's due process rights was explicitly premised upon the

Ninth Circuit's interpretation of state law. Specifically, the Ninth Circuit concluded the notice provisions of NRS 107.090 are not incorporated into NRS 116.31168. However, because the Nevada Supreme Court has since rejected the Ninth Circuit's interpretation by holding that the notice provisions of NRS 107.090 are incorporated into NRS 116.31168, *Bourne Valley* is no longer controlling authority with respect to § 116.3116's notice provisions.

Accordingly, to the extent BANA seeks to quiet title based upon the Ninth Circuit's holding in *Bourne Valley*, it necessarily fails. The Court thus turns to BANA's remaining arguments in support of its Motion.

### B. Tender of Super Priority Lien Prior to Foreclosure

BANA argues that alongside the unconstitutionality of the foreclosure sale, HOA did not have the ability to extinguish BANA's lien on the Property because BANA tendered the super priority amount. (Pl. MSJ 13:14–14:4, ECF No. 109). Additionally, BANA contends that even if it did not tender payment of the super priority amount, Gregg and Frances Escamilla ("Escamillas") satisfied the super priority debt with their own payment. (*Id.* 19:2–20:4). As a result, according to BANA, the Escamillas' payment caused HOA's lien to be sub priority to BANA's. (*Id.*).

Looking first to BANA's purported tender, BANA claims that its "offer to pay, coupled with its present ability to pay, was sufficient tender that extinguished the HOA's superpriority lien." (Pl. MSJ 14:22–25, ECF No. 109). This argument fails, however. A "letter offering to pay the superpriority lien amount, once that amount [is] determined, [is] not sufficient to constitute a valid tender." *Bank of Am., N.A. v. TRP Fund IV, LLC*, 422 P.3d 712, 2018 WL 3545288, at *1 (Nev. 2018).

Here, BANA sent a letter requesting a ledger from NAS and offered to pay the super priority amount. (Pl. MSJ 16:7–9, 16:14–18, ECF No. 109); (*see* Letter at 5–6, Ex. 1 to Ex. P of Pl. MSJ, ECF No. 109-16). BANA admittedly did not send payment to HOA. (Pl. MSJ 16:14–

15) ("The only reason BANA did not submit an actual payment was the HOA and HOA Trustee's refusal . . . to provide them with any information to show how much was owed."). Because BANA only declared its willingness to pay and did not present actual payment, there was no tender of the super priority amount that would have prevented HOA from extinguishing BANA's DOT through foreclosure. *See Nationstar Mortg., LLC v. Melvin Grp., LLC*, 422 P.3d 711 (Nev. 2018) ("Absent evidence that the HOA or its agent affirmatively thwarted appellants' efforts to tender the superpriority amount, the alleged futility of any such effort does not establish unfairness or oppression."); *see also Bank of New York Mellon v. S. Highlands Cmty. Ass'n*, No. 2-16-cv-1177-JCM-VCF, 2018 WL 1021333 (D. Nev. Feb. 22, 2018) (finding that Bank of New York Mellon did not offer any evidence as to tender "when BNYM/its predecessor-in-interest elected to send a letter requesting the amount for the nine-months' worth of assessments owed").

As for the Escamillas' payment, BANA provides evidence that the Escamillas sent HOA's collection agent, NAS, a check for $580.52 as payment toward the delinquent fees owed to HOA. (Escamilla Money Order, Ex. L to Pl. MSJ, ECF No. 109-12). NAS then accepted this payment. (NAS Receipt, Ex. M to Pl. MSJ, ECF No. 109-13). BANA asserts that because this payment exceeded HOA's super priority amount for the Property foreclosure, it therefore eliminated HOA lien's super priority status and entitled Plaintiff's lien to remain on the Property after the foreclosure.

The Nevada Supreme Court decision that best addresses this situation is *Saticoy Bay LLC Series 2141 Golden Hill v. JPMorgan Chase Bank*, 408 P.3d 558, 2017 WL 6597154 (Nev. 2017). There, the Nevada Supreme Court in an unpublished Order of Affirmance dealt with a former homeowner's payment to the HOA to satisfy a super priority component of the HOA's lien. *Id.* at *1. After payment, however, the HOA foreclosed on the property. *Id*. The HOA argued that even though the homeowner paid the prior owed amount, new and unpaid

fees had accrued to justify the foreclosure under NRS 116 that would extinguish all prior liens. *Id.* The Nevada Supreme Court ruled against the HOA, however. *Id.* The decision to do so focused on the fact that the homeowner's payment eliminated the entire super priority amount related to the previous notice of delinquent assessments. *Id.* (finding "undisputed evidence that the former homeowner made payments sufficient to satisfy the superpriority component . . . and that the HOA applied those payments to the superpriority component . . . [so that] there was no superpriority component of the HOA's lien that could have extinguished respondent's deed of trust). Additionally, the HOA failed to file any later notice of delinquent assessments to begin a new cycle in conformity with NRS 116 procedures. *Id.* Thus, because the homeowner eliminated the relevant super priority amount, "there was no superpriority component of the HOA's lien that could have extinguished" a prior deed of trust under NRS 116. *Id.*

Here, the facts differ from those in *Golden Hill* in a crucial way. BANA's evidence shows that the Escamillas' payment did not eliminate the claimed super priority component of HOA's notice of delinquent assessment that authorized the Property's foreclosure. (Dep. Christopher Yergensen at 51, Ex. N to MSJ, ECF No. 109-14) (stating that only part of the Escamillas' payment went to the HOA); (*see* Pl.'s MSJ 4:10–15, ECF No. 109) (providing a calculation to show what the Escamillas owed to the HOA). Accordingly, because HOA's super priority component remained after the Escamillas' payment, HOA properly foreclosed under its super priority lien under NRS 116 and extinguished BANA's DOT.

### C. Equitable Grounds for Setting Aside Sale

The Nevada Supreme Court recently held that the commercial reasonableness standard of Uniform Commercial Code Article 9 does not apply in the context of HOA foreclosure sales of real property. *Nationstar Mortgage, LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 644 (Nev. 2017). The relevant inquiry, rather, is "whether the sale was affected by fraud, unfairness, or oppression." *Id.* at 646. "[M]ere inadequacy of price is not in itself

sufficient to set aside the foreclosure sale, but it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression." *Id.* at 648. The burden of establishing that a foreclosure sale should be set aside rests with the party challenging the sale. *Id.* at 646.

Here, BANA claims that the sale should be set aside or modified for three reasons: (1) the foreclosure resulted in an inadequate purchase price; (2) the parties faced massive legal uncertainty at the time of the foreclosure; and (3) HOA failed to respond to BANA's letter that offered payment for amounts owed to the HOA prior to the foreclosure. (Pl. MSJ 20:9–24:17, ECF No. 109). The Court addresses each argument below.

### 1. Inadequate Purchase Price

BANA contends that the Court should equitably set aside the sale in this case by first considering the grossly inadequate foreclosure sale price of the Property. BANA argues that HOA sold the Property for only $17,500.00, which is "less than 10% of fair market value." (Pl. MSJ 20:11–13, ECF No. 109) (indicating "a fair market value of $181,000.00 as of the date of the foreclosure"). Based on decisions by the Nevada Supreme Court, however, the Court is not persuaded to set aside the foreclosure sale on grounds of price inadequacy. In *Nationstar Mortgage, LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 647–49 (Nev. 2017), the Nevada Supreme Court declined to make any hard-line rule to equitably set aside a sale "based solely on price." *See id.* at 648 (discussing cases and reaffirming that inadequate price alone is insufficient to set aside a foreclosure sale). Rather, the Nevada Supreme Court explained that there is no reason to invalidate a "legally made" sale absent *actual* evidence of fraud, unfairness, or oppression. *Id.*

### 2. Legal Uncertainty

BANA next claims that the sale was unfair because "all parties faced massive legal uncertainty at the time of the HOA foreclosure sale." (Pl. MSJ, 23:7–20, ECF No. 109). The

Nevada Supreme Court, however, has declared that Nevada law during this time period was not undecided with respect to a lender's ability to protect is senior deed of trust. Particularly, the Nevada Supreme Court stated "a plain reading of NRS 116.3116 indicates that at the time of Bank of America's [2012] tender, tender of the superpriority amount by the first deed of trust holder was sufficient to satisfy that portion of the lien. Thus, the issue was not undecided." *Bank of Am., N.A.*, 2018 WL 4403296, at *3 (Nev. 2018). A letter by BANA also recognizes the HOA's super priority status and BANA's need to pay a super priority amount. (*See* Letter at 5–6, Ex. 1 to Ex. P of Pl. MSJ, ECF No. 109-16) ("Based on Section 2(b), a portion of your 110A lien is arguably senior to BANA's first deed of trust . . . ."). Thus, the Court is not persuaded that the purported legal uncertainty establishes fraud, oppression, or unfairness.

### 3. Content of Notices

Regarding HOA's failure to specify the super priority portion of the lien in the foreclosure notice, this, too, is not enough to constitute fraud, unfairness, or oppression. As another court in this District recognized, "[t]he fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Bank of Am., N.A. v. Saticoy Bay LLC Series*, No. 2:17-cv-02808-APG-CWH, 2018 WL 3312969, at *3 (D. Nev. July 5, 2018). The Nevada Supreme Court has also rejected the argument that foreclosure notices must always state the super priority portion, reasoning, in part, that "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc).

Additionally, HOA's failure to respond to BANA's letter does not show fraud, unfairness, or oppression to set aside the foreclosure sale in this case. Though BANA sent a letter to HOA, that letter did not include payment for the super priority portion owed. (*See*

Letter at 5–6, Ex. 1 to Ex. P of Pl. MSJ, ECF No. 109-16).  Further, BANA has provided not any Nevada authority that imposes an affirmative duty on HOA to respond to an offer to pay an outstanding super priority amount. (*See* Pl. MSJ 23:16–20, ECF No. 109).   Rather, Nevada case law suggests that there is no affirmative duty. *See Bank of Am., N.A. v. SFR Investments Pool 1, LLC*, 420 P.3d 559 (Nev. 2018) ("[I]t would be purely speculative to conclude that the failure to respond amounted to fraud, unfairness, or oppression for purposes of invalidating the 2011 sale.").  Nevada law also recognizes that BANA had a remedy available if any payment to HOA exceeded the super priority amount. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund).  Despite this remedy being available, however, BANA failed to make any payment at all.  Thus, without evidence of an obstructive effort by HOA, the Court finds that the equities here do not warrant the Property's foreclosure sale to be set aside. *See Nationstar Mortg., LLC v. Maplewood Springs Homeowners Ass'n*, 238 F. Supp. 3d 1257, 1275 (D. Nev. 2017) (explaining that it would be "inequitable" to set aside a foreclosure sale under NRS 116 when a lender failed to tender any amount at all even though it had a remedy for overpayment).

### D. Lis Pendens

Because of the Court's findings stated above, BANA does not have a recognizable interest in the Property under the quiet title or equitable grounds claimed.  Accordingly, BANA cannot maintain the Lis Pendens on the Property as it no longer has a viable claim affecting title or possession.  The Lis Pendens is thus expunged. *See* Nev. Rev. Stat. § 14.015.

### E. Interest of Gregg and Frances Escamilla

The Court also grants SFR's request for summary judgment against the Escamillas.  SFR filed its Complaint against the Escamillas through a cross claim, (ECF No. 9), seeking quiet title.  Because the Court finds that HOA properly foreclosed on the Property under NRS 116, and that SFR is the title owner, the Escamillas no longer have a viable property interest.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 105), is **GRANTED**.[2]

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 113), is **GRANTED**.

**IT IS FURTHER ORDERED** that BANA's Motion for Partial Summary Judgment, (ECF No. 109), is **DENIED**.

The Clerk of Court shall enter judgment accordingly.

**DATED** this __29__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

---

[2] After BANA filed its Complaint, HOA responded with a third-party Complaint against NAS. (ECF No. 24). NAS then filed counterclaims against HOA. (ECF No. 32). As HOA admits, these claims "only arise in the event of a monetary judgment against HOA." (HOA.'s MSJ 4:9–11, ECF No. 105). These claims are therefore dismissed because the Court finds that BANA's lien on the Property was extinguished by the foreclosure sale, thereby finding that HOA will not incur a monetary judgment against it in this case.